# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

        v.

Scott Phillip Flynn,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 16-347 ADM/KMM

_____

David J. MacLaughlin and Benjamin F. Langner, Assistant United States Attorneys, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Earl P. Gray, Esq., Earl Gray Defense, St. Paul, MN, and Paul C. Engh, Esq., Minneapolis, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Scott Phillip Flynn's ("Flynn") Objections [Docket No. 74] to Magistrate Judge Katherine Menendez's August 11, 2017 Report and Recommendation [Docket No. 62] ("R&R"). In the R&R, Judge Menendez recommends denying Flynn's Motion to Dismiss [Docket No. 22] and Motion to Suppress Statements [Docket No. 31].  For the reasons set forth below, the Objections are overruled.

## II.  BACKGROUND

On December 21, 2016, Flynn was charged in a multi-count Indictment with conspiracy to defraud the United States, tax evasion, and filing false tax returns.  See generally Indictment [Docket No. 1].  On April 14, 2017, Flynn filed a Motion to Dismiss, arguing that several counts in the Indictment are barred by the statute of limitations.  Also on April 14, Flynn filed a Motion to Suppress Statements made to IRS agents while the agents were conducting a search of his

residence.  Flynn has filed Objections to the R&R which recommended that his Motions be denied.

## III.  DISCUSSION

### A.  Standard of Review

A district judge may refer a defendant's motion to dismiss an indictment or motion to suppress evidence to a magistrate judge for recommendation.  Fed. R. Crim. P. 59(b)(1).  The district judge must make an independent, de novo determination of those portions of the report and recommendation to which a party objects.  Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1)(C); D. Minn. L.R. 72.2(b).  A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

### B. Objections

#### 1.  Motion to Dismiss

Flynn argues that Counts 3 through 5 of the First Superseding Indictment [Docket No. 64], which charge filing false tax returns for the years 2007, 2008, and 2009, must be dismissed as time-barred.  The Court disagrees.

Ordinarily, the statute of limitations for filing false tax returns is six years.  26 U.S.C. § 6531.  However, under 18 U.S.C. § 3292, the statute of limitations may be suspended for up to three years in cases where there is an international investigation in progress.  Section 3292 provides in relevant part:

> (a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute

2

of limitations for the offense if the court finds by a preponderance
of the evidence that an official request has been made for such
evidence and that it reasonably appears, or reasonably appeared at
the time the request was made, that such evidence is, or was, in
such foreign country. . . .

(b) Except as provided in subsection (c) of this section, a period of
suspension under this section shall begin on the date on which the
official request is made and end on the date on which the foreign
court or authority takes final action on the request.

(c) The total of all periods of suspension under this section with
respect to an offense--

(1) shall not exceed three years; and

(2) shall not extend a period within which a criminal case
must be initiated for more than six months if all foreign
authorities take final action before such period would
expire without regard to this section.

18 U.S.C. § 3292.

Here, the Government submitted two ex parte applications to district court judges to
suspend the running of the statute of limitations. The first tolling application was submitted in
2013 to United States District Judge John R. Tunheim (the "2013 Application"). Government's
Resp. Mot. Dismiss [Docket No. 38] Ex. B. The 2013 Application was supported by a sworn
declaration by Assistant United States Attorney David J. MacLaughlin ("AUSA MacLaughlin")
describing developments in the grand jury investigation that caused the Criminal Investigation
Division of the IRS to determine that "evidence of this crime exists in bank records,
governmental tax records, and bankruptcy records located in the Commonwealth of Australia."
Id. at 5. Judge Tunheim granted the 2013 Application upon finding by a preponderance of the
evidence that it reasonably appeared that documentary evidence of the offenses under
investigation would be found in Australia. Id. at 8.

3

The 2013 Application therefore suspended the operation of the statute of limitations by 1005 days, from October 10, 2013, when the Government made an official request to Australia for the evidence, until July 14, 2016, when Australia took final action on the request.  R&R at 6. When added to the six-year statute of limitations, the suspension period extended the full statute of limitations to eight years, nine months, and one day.  Id.

The second tolling application was submitted in 2015 to United States District Judge Patrick J. Schiltz  (the "2015 Application").  Government's Resp. Mot. Dismiss Ex. C.  The 2015 Application was again supported by a sworn declaration from AUSA MacLaughlin describing developments in the grand jury investigation that caused the Criminal Investigation Division of the IRS to determine that "evidence of this crime exists in bank records and other records located in Costa Rica."  Id. at 6.  Judge Schiltz granted the 2015 Application upon finding that it reasonably appeared by a preponderance of the evidence that documentary evidence of the offenses under investigation would be found in Costa Rica.  Id. at 12.

The 2015 Application therefore suspended the operation of the statute of limitations from January 15, 2015 to January 19, 2016.  Id.  Since this time period is entirely subsumed within the suspension effectuated by the 2013 Application, the 2015 Application did not further extend the statute of limitations.

Flynn challenges the validity of the 2013 and 2015 Applications, arguing "a brevity contaminates both tolling applications."  Suppl. Mem. Supp. Mot. Dismiss [Docket No. 54] at 10; Obj. at 9.  Flynn argues that the Applications fall short of the evidentiary standard set by § 3292(a), which requires the Government to show by "a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably

appeared at the time the request was made, that such evidence is, or was, in such foreign country." 18 U.S.C. § 3292(a).

The Eighth Circuit has not interpreted § 3292(a).  However, the Eleventh Circuit has held that "the § 3292(a) preponderance of the evidence requirement is quite broad and the Government may satisfy its burden by including a sworn or verified application containing the necessary factual information, testimony by Government officials, affidavits, declarations, exhibits, or other materials of evidentiary value."  United States v. Trainor, 376 F.3d 1325, 1332–33 (11th Cir. 2004).  Thus, the evidentiary burden in § 3292(a) "is not a high standard of proof" and is satisfied if the Government "provide[s] evidence bearing some indicia of reliability."  Id. at 1332–33.  A sworn statement made under oath ensures a degree of reliability because "[t]he oath is an important indicia of reliability.  It is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words."  Id. at 1332 (internal quotations omitted).

In the R&R, Judge Menendez correctly applied this standard and concluded that the 2013 and 2015 Applications satisfied the evidentiary threshold of § 3292(a) because they were supported by the sworn declarations of an Assistant United States Attorney.  R&R at 8–10.  Although the 2013 and 2015 Applications are succinct and perhaps less detailed than applications in some other cases,[1] they are nevertheless supported by sufficiently reliable

---

[1] Flynn cites to other cases involving lengthier or more detailed § 3292(a) applications to argue that the applications here are insufficient because they are briefer in comparison.  Obj. at 10 (citing United States v. Jenkins, 633 F.3d 788, 798 (9th Cir. 2011) (sixteen-page tolling application); United States v. Lyttle, 667 F.3d 220, 223 (2d Cir. 2012) (application included documented wire transfers and grand jury testimony of a witness of the alleged fraudulent scheme); United States v. Broughton, 689 F.3d 1260, 1274 (11th Cir. 2012) (application included 22-page international Letter Rogatory)).

evidence that "tend[s] to prove it is reasonably likely that evidence of the charged offenses is in a

foreign country." Trainor, 376 F.3d at 1332. Thus, the 2013 and 2015 Applications satisfy

§ 3292(a)'s minimal evidentiary burden.

Flynn also argues that the Government failed to inform Judge Schiltz in 2015 that a

previous tolling request had been submitted to Judge Tunheim in 2013. Flynn contends the

Government had knowledge in 2013 of activities in both Australia and Costa Rica, but chose to

split the tolling requests for the purpose of unfair delay. Judge Menendez considered this

argument and properly rejected it. As noted in the R&R, the statute of limitations was

functionally unaffected by the 2015 Application because the tolling period of the 2015

Application was fully subsumed within the tolling period effectuated by the 2013 Application.

Additionally, multiple tolling requests are contemplated under § 3292(c)(1), which states that

"the total of all periods of suspension under this section with respect to an offense shall not

exceed three years." 18 U.S.C. § 3292(c)(1).

Because the statute of limitations was properly tolled under § 3292, Counts 3 through 5

of the First Superseding Indictment are timely. Flynn's Objection to the R&R's recommended

denial of the Motion to Dismiss is overruled.

## 2. Motion to Suppress Statements

Flynn argues that Judge Menendez wrongly concluded he was not in custody when he

made statements to law enforcement agents while the agents were conducting the search of his

home. The facts surrounding the search and statements are thoroughly detailed in the R&R and

are incorporated by reference. See R&R at 13–15. Briefly, at about 7:30 a.m. on February 23,

2012, IRS Special Agent Tim Nichols ("Agent Nichols") arrived with about a dozen other law

enforcement officers, including three uniformed police officers, to execute a search warrant of Flynn's residence. Hr'g Tr. [Docket No. 47] at 3, 5. Flynn's wife was alone at home and answered the door. Id. at 5. When she opened the door, the officers stepped in. Id. The officers then conducted a security sweep of the residence to determine whether anyone else was in the home. Id. During the security sweep, Flynn's wife was restricted from using her phone. Id. at 6–7.

At 7:50 a.m., after the sweep was completed, Flynn's wife called her husband. Id. at 7. Flynn arrived home at 8:30 a.m. Id. at 8. Special Agent Nichols affirmatively told Flynn that he was not under arrest and that he was free to leave the residence at any time. Id. at 14. Agent Nichols also told Flynn that he was there to execute a search warrant and that he wanted to ask Flynn some questions. Id. at 9. Flynn responded that he did not think it was wise to speak without an attorney. Id. at 9–10. Agent Nichols did not continue to question Flynn. Id. at 10.

Later during the search, Flynn reinitiated contact with Agent Nichols by asking him what he was looking for and what would be taken from the home. Id. Flynn's wife was nearby and gave Flynn a copy of the warrant with the items to be seized. Id. at 11. Flynn reviewed the warrant and stated that the companies identified on the warrant belonged to his father and not to him, and that records related to the companies were not in Flynn's home. Id.

Agent Nichols again told Flynn that he would like to ask him some questions. Id. at 12. Agent Nichols reminded Flynn of his earlier statement that he did not want to speak without an attorney. Id. Flynn responded that he did not want his words to incriminate him, to which Agent Nichols replied that "they certainly could be used to incriminate you." Id. at 13. Without further questioning by Agent Nichols, Flynn told Nichols that Bruce Bullock, a tax professional, had

instructed Flynn not to speak about trusts that had been established because the trusts were "involved or complicated." Id. Flynn also volunteered that his father played an administrative role in the businesses listed on the search warrant. Id. at 14.

Also during the search, Mrs. Flynn informed her husband that the agents had asked her about an individual referred to as "Mr. Neary." Id. at 15. Flynn then asked if the agents were searching as a result of mortgage fraud involving Mr. Neary. Id. Agent Nichols responded that they were aware that Flynn had received wire transfers from Mr. Neary, to which Flynn replied that it is difficult to hide the fact of a wire transfer. Id. at 15–16. Flynn also stated that the money he or his wife received from Mr. Neary came from and individual named Miotti in Australia. Id. at 16. Flynn characterized the transfers from Miotti to Mr. Neary and then to Flynn's wife as loans from investors. Id. at 17.

The agents also searched a car parked inside the garage of the home and found a cell phone. Id. at 20–21. Flynn informed Agent Nichols that text messages on the phone that were in Spanish had been sent from a Puerto Rican attorney and included privileged information. Id. at 29–30.

The search lasted slightly over four hours and ended at approximately 11:45 a.m. Id. at 21. During the search, the officers did not unholster their guns, raise their voices, threaten, or argue with Flynn. Id. at 22–23. At the conclusion of the search, Flynn was not arrested. Id. at 22.

In the R&R, Judge Menendez concluded from a review of the totality of the circumstances that Flynn was not in custody at the time he made the statements to law enforcement. Therefore, the officers at the search were not required to provide him with a

warning under <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).  Judge Menendez thus

recommended that the Motion to Suppress Statements be denied.

Flynn objects, arguing that he was in custody at the time of the interview.  Flynn

contends that he was compelled to stay because it would have been unreasonable to abandon his

home while armed, uniformed officers remained in his home.

Miranda warnings are required when law enforcement officers interrogate a person who

"has been taken into custody or otherwise deprived of his freedom of action in any significant

way." <u>United States v. New</u>, 491 F.3d 369, 373 (8th Cir. 2007) (quoting <u>Miranda</u>, 384 U.S. at

444).  "The ultimate question in determining whether a person is in custody for purposes of

<u>Miranda</u> is whether there is a formal arrest or restraint on freedom of movement of the degree

associated with a formal arrest."  <u>United States v. Williams</u>, 760 F.3d 811, 814 (8th Cir. 2014)

(internal quotations omitted).  This question is answered by considering "the totality of the

circumstances that confronted the defendant at the time of questioning, and inquir[ing] whether a

reasonable person would have felt that he or she was free to terminate the interview and leave."

<u>Id.</u>  The "most obvious" means of showing that a defendant has not been taken into custody "is

for the police to inform the suspect that an arrest is not being made and that the suspect may

terminate the interview at will."  <u>Id.</u>  The Eighth Circuit has repeatedly observed that when a

person is questioned on their "own turf," the surroundings are "not indicative of the type of

inherently coercive setting that normally accompanies a custodial interrogation."  <u>Id.</u> at 15.

When an individual is not in custody, the Fifth Amendment right to counsel is not implicated.

<u>United States v. Muhlenbruch</u>, 634 F.3d 987, 997 (8th Cir. 2011); <u>United States v. Fitterer</u>, 710

F.2d 1328, 1333 (8th Cir. 1983).

Here, the Court concurs with Judge Menendez's well-reasoned conclusion that Flynn was not in custody at the time he made the statements. Most significantly, Agent Nichols told Flynn that he was not under arrest and that he could leave at any time.[2] Additionally, Flynn voluntarily drove to his house after being contacted by his wife, was allowed to move freely about his home when he arrived, was not restrained by the officers in any way, reinitiated conversation with the officers multiple times, and volunteered information to the agents. Under the totality of the circumstances, a reasonable person would have felt free to terminate the conversation and leave. Because Flynn was not in custody at the time of the interview, his Fifth Amendment right to counsel was not implicated.

Flynn also argues that his Sixth Amendment right to counsel was violated because it is reasonable to construe his statement that he "did not think it wise to speak without counsel" as a request to speak to a lawyer, and thus Agent Nichols should have honored it. Flynn contends that Judge Menendez did not reach this issue in the R&R. To the contrary, Judge Menendez correctly determined that the Sixth Amendment right to counsel is not implicated here. R&R at 19. The Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" McNeil v.

---

[2] This fact materially distinguishes this case from United States v. Longbehn, 850 F.2d 450 (8th Cir. 1988), a case relied upon by Flynn to argue that he was in custody at the time the agents were searching his home. In Longbehn, police officers transported the defendant to police headquarters, then to his home where he was chaperoned and interrogated during a search of his residence, then back to police headquarters. 850 F.2d at 451. It was not until after the defendant was returned to police headquarters that he was told that he could leave. Id. at 453. In contrast, Agent Nichols told Flynn during the search at his home that he was not under arrest and was free to leave.

Wisconsin, 501 U.S. 171, 175 (1991) (quoting United States v. Gouveia, 467 U.S. 180, 188 (1984)).  As Judge Menendez noted, Flynn made the statements at issue before any charges had been brought or an arraignment had occurred.  Thus, the Sixth Amendment does not provide a basis for suppressing the statements.

Flynn's Objection to the R&R's recommended denial of the Motion to Suppress Statements is overruled.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant Scott Phillip Flynn's Objections [Docket No. 74] to the August 11, 2017 Report and Recommendation [Docket No. 62] are **OVERRULED**;

2.    The Report and Recommendation [Docket No. 62] is **ADOPTED**;

3.    Flynn's Motion to Dismiss [Docket No. 22] is **DENIED**; and

4.    Flynn's Motion to Suppress Statements [Docket No. 31] is **DENIED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 14, 2017.

11