United States of America,

        Plaintiff,

v.

Scott Phillip Flynn,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 16-347 ADM/KMM

___

David J. MacLaughlin and Benjamin F. Langner, Assistant United States Attorneys, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Patrick J. Egan, Esq., Fox Rothschild LLP, Philadelphia, PA, on behalf of Defendant.

___

## I. INTRODUCTION

On December 20, 2018, the undersigned United States District Judge heard oral argument on Defendant Scott Phillip Flynn's ("Flynn") Motion to Continue Sentencing [Docket No. 113] and Motion to Withdraw Guilty Plea [Docket No. 115]. For the reasons set forth below, the Motion to Continue Sentencing is granted and the Motion to Withdraw Guilty Plea is denied.

## II. BACKGROUND

On December 21, 2016, a grand jury indicted Flynn with conspiracy to defraud the United States in violation of 18 U.S.C. § 371, tax evasion in violation of 26 U.S.C.§ 7201, and filing false tax returns in violation of 26 U.S.C. § 7206(1). See generally Indictment [Docket No. 1]. Flynn retained attorney Earl Gray in 2015 and added attorney Paul Engh as co-counsel in March of 2017. Gray and Engh are two of the most experienced and well respected federal criminal defense attorneys in Minnesota.

After several continuances of the trial date, trial was set for June 11, 2018. On June 4,

2018, just one week before trial was scheduled to begin, Flynn reached a Plea Agreement with the Government and entered a plea of guilty to Count 1 (conspiracy to defraud the United States) and Count 3 (false tax return - 2007) of the Second Superseding Indictment ("SSI") [Docket No. 83]. See Plea Agreement [Docket No. 90]; Min. Entry [Docket No. 89]; Plea Tr. [Docket No. 93]. In return for Flynn's pleas of guilty, the Government agreed to dismiss the remaining five counts in the SSI. Plea Agreement ¶ 2. Because "trial [was] only one week away, and the government ha[d] expended considerable resources preparing for the trial," the Plea Agreement did not include the third point typically awarded by the Government for acceptance of responsibility. Plea Agreement ¶ 6(d).

Early in the change of plea hearing on June 4, the Court made certain Flynn understood the finality of the guilty plea:

> COURT: There is a degree of finality to today's proceedings, because if I accept your guilty plea at the end of the questioning, that closes the door to whether you ever have a trial. So one of my last questions will be do you want me to accept the plea agreement, and that's a way of saying that's the end of it then with regard to trial or no trial. Do you understand that?
>
> FLYNN: I do.
>
> COURT: There'll be issues about sentencing and other things to talk about, but not whether or not you have a trial. Do you understand that?
>
> FLYNN: Yes.

Plea Tr. at 4:11–23.

After an extensive inquiry reflected in a 29 page transcript of Flynn's understanding of his constitutional rights, his plea agreement and the factual basis for his plea, the Court made certain that Flynn understood he could not change his mind about pleading guilty and not going to trial:

2

> COURT: All right. Mr. Flynn, I'm up to that question I predicted, that I was telling you about, which is kind of the final one, and that is whether you want me to accept your plea agreement knowing that that's final on the issue of whether or not you will have a trial.
>
> FLYNN: Yes, Your Honor.
>
> COURT: Okay. Do you want me to accept it?
>
> FLYNN: Yes.
>
> COURT: The plea agreement is accepted.

Id. at 27:25–28:8.

Then on October 30, 2018, nearly five months after the plea hearing, Flynn filed a sentencing memorandum in which he again "agree[d] with, and reaffirm[ed], the factual basis of [his] plea agreement." Def.'s Sentencing Mem. [Docket No. 106] at 15.

Not until December 11, 2018, more than half a year after his guilty plea and just nine days before he was scheduled to be sentenced, did Flynn reverse course. Through new counsel, Flynn moves to substitute new counsel for his former counsel, continue his sentencing, and withdraw his guilty plea.

## III. DISCUSSION

### A. Withdrawal and Substitution of Counsel

As an initial matter, the withdrawal and substitution of counsel in this case is in contradiction of Local Rule 83.7(b), which permits substitution of counsel only if "the withdrawal and substitution will not delay the trial or other progress of the case." Flynn's change in counsel has delayed the progress of this case, and there is no legally sound basis for justifying the delay. Flynn does not assert that his former attorneys were ineffective. His new counsel's arguments for withdrawing Flynn's plea are based on alleged deficiencies in the Plea

3

Agreement and plea hearing, which took place half a year ago, and on a Supreme Court case decided in March of 2018, nearly three months before Flynn entered his plea. Nevertheless, substitution of counsel will be permitted based on the Court's judgment that Flynn is facing lengthy sentencing guidelines and should be able to have retained counsel of his choice represent him. No further delays will be occasioned by this change in counsel.

**B. Withdrawal of Guilty Plea**

Under Rule 11(d) of the Federal Rules of Criminal Procedure, a defendant may withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "While the standard is liberal, the defendant has no automatic right to withdraw a plea." United States v. Heid, 651 F.3d 850, 853 (8th Cir. 2011). If a fair and just reason exists, a court must also consider "whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." Id. at 853–54. "A guilty plea is a solemn act not to be set aside lightly." United States v. Prior, 107 F.3d 654, 657 (8th Cir. 1997).

**1. Fair and Just Reasons**

Flynn argues that fair and just reasons exist for withdrawing his plea because: (1) he was never advised of the specific elements of the offenses; (2) the factual basis of the plea was inadequate to support the crimes charged; (3) violations of Rule 11 of the Federal Rules of Criminal Procedure occurred during the plea hearing; and (4) the SSI did not properly state a conspiracy to defraud the United States after the Supreme Court's March 21, 2018 decision in Marinello v. United States, 138 S. Ct. 1101 (2018).

4

### a. Nature of the Charges

Flynn argues that the plea hearing failed to comply with Federal Rule of Criminal Procedure Rule 11(b)(1)(G), which requires the Court to "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Flynn contends this requirement was not satisfied because the case is exceptionally complex, yet the Court did not identify the elements of the offenses.

Rule 11 does not require that the elements of each charge be reviewed with the defendant. Rather, Rule 11(b)(1)(G) is satisfied if the record as a whole reflects that the defendant possessed "an understanding of the law in relation to the facts." United States v. Johnson, 715 F.3d 1094, 1103 (8th Cir. 2013).

Here, the record provides ample evidence that the Court informed Flynn of the nature of the charges and that Flynn understood the law in relation to the facts. The Court read the first paragraph of Count 1 verbatim from the SSI before asking Flynn for his plea:

> COURT: It's alleged in Count 1 that beginning in or about 2005 and continuing through at least in or about 2015, in the State and District of Minnesota and elsewhere, the defendant, Scott Phillip Flynn, also known as Phil Flynn, and others known and unknown to the grand jury, including, but not limited to, S.M. and Phillip J. Flynn, did unlawfully and knowingly conspire, combine, confederate, and agree with each other to defraud the United States by deceitful and dishonest means by impeding, impairing, obstructing, and defeating the lawful governmental functions of the Internal Revenue Service . . . in the ascertainment, computation, assessment, and collection of revenue, that is, United States income taxes of defendant Scott Phillip Flynn, and the other members of the Flynn Group, including Integritas and Phillip J. Flynn. To that count, what is your plea?
>
> FLYNN: Guilty.
>
> COURT: Okay. And there's a number of means and a lengthy description of that I take it you've gone over with your attorneys. I'm assuming, Mr. Engh, that you waive any further reading of the overt acts or the conspiracy charge?

>    ENGH: We do, your Honor.

Plea Tr. at 11–12.

> The Court then read the entirety of Count 3 from the SSI as follows:

>> COURT: And then Count 3 reads as follows: That on or about October 17th, 2008, in the State and District of Minnesota, the defendant, Scott Phillip Flynn, also known as Phil Flynn, did willfully make and file with the Internal Revenue Service a false United States Individual Income Tax Return, Form 1040, separately from his wife, for the taxable year ended December 31st, 2007, which he signed and subscribed on or about October 15th, 2008, and which was verified by a written declaration that was made under the penalties of perjury, and which said Income Tax Return he did not believe to be true and correct as to every material matter, in that line 22 reported total income of $26,136, whereas, as he then and there well knew and believed, his total income was substantially more than $26,136, in violation of Title 26, United States Code, Section 7206(1). To that count, what is your plea?

>> FLYNN: Guilty.

Id. at 12–13.

In addition to reading the substance of the charges to Flynn, the Court reviewed the Plea Agreement with him paragraph by paragraph, id. at 11–20; advised him of the maximum penalties applicable to each charge, id. at 13–14; asked Flynn if he'd had enough time to speak with his attorneys about his case (Flynn answered, "Yes"), id. at 5; asked Flynn if he was satisfied with his attorneys' service (Flynn answered, "I am"). Id.

Flynn argues he was not given an opportunity to testify whether counsel had thoroughly explained the elements of the charges or his available defenses. The record shows that at the beginning of the change of plea hearing, the Court expressly told Flynn that "if there's something that's concerning you, you can also take a timeout. Just tell me and I'll give some privacy to talk to [counsel] to clear up any areas of confusion, ok?" Id. at 4. After advising him of his constitutional rights, the Court again invited Flynn to raise any concerns he may have had:

> COURT: You seem to be following just fine. Is there anything you'd like to ask me about what your constitutional rights are?
>
> FLYNN: I have no questions at this point.
>
> COURT: I assume you've gone over this at some length with your counsel.
>
> FLYNN: Yes, I have.

Id. at 10.

In addition to these facially sufficient descriptions of the nature of the charges, the record includes further indicia that Flynn understood the nature of the charges to which he pled guilty. Flynn was represented by two experienced federal criminal defense attorneys, one who had represented him in this case for more than two years, and the other who had been involved for more than 15 months.

Flynn is an intelligent individual capable of understanding sophisticated concepts and transactions. He has assisted privately held corporations in becoming publicly traded through reverse merger transactions. Plea Agreement ¶ 3. Although the crimes charged are complex, the complexity stems largely from the intricate nature of Flynn's financial affairs, including his use of nominee shareholders, overseas attorneys, bank accounts in Australia and Costa Rica, and multiple limited liability companies. Further, Flynn has prior experience with the criminal justice system, having been convicted previously by a jury of securities fraud in 1998. See United States v. Flynn, No. 98–134 MJD/JMM (D. Minn. 1998). The record thus establishes that Flynn understood the nature of the crimes to which he pled guilty.

### b. Factual Basis

Flynn also argues that the factual bases for Counts 1 and 3 were inadequate to support the plea. Federal Rule of Criminal Procedure 11(b)(3) requires that "[b]efore entering judgment on a

guilty plea, the court must determine that there is a factual basis for the plea." "A guilty plea is supported by an adequate factual basis when the record contains sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense." United States v. Sharp, 879 F.3d 327, 335 (8th Cir. 2018), cert. denied, 139 S. Ct. 345 (2018) (quoting United States v. Cheney, 571 F.3d 764, 769 (8th Cir. 2009)).

## I. Count 1

Count 1 of the SSI charges Flynn with violating 18 U.S.C. § 371 by conspiring with others to defraud the IRS in the function of assessing and collecting taxes, also known as a Klein conspiracy. SSI ¶ 16; United States v. Fletcher, 322 F.3d 508, 513 (8th Cir. 2003); United States v. Ervasti, 201 F.3d 1029, 1037 (8th Cir. 2000); United States v. Klein, 247 F.2d 908, 916 (2d Cir. 1957), cert. denied, 355 U.S. 924 (1958). The Eighth Circuit has held that "[t]o convict a defendant of a Klein conspiracy, the government must show the existence of an agreement to defraud the IRS and an overt act by one of the conspirators in furtherance of the agreement's objectives." Fletcher, 322 F.3d at 513.

At the time of the plea, the record included ample facts supporting a reasonable determination that Flynn committed the offense charged in Count 1. Flynn stipulated in the Plea Agreement that: as compensation for assisting two privately held companies to become publicly traded, Flynn received millions of shares of publicly traded stock in those companies; Flynn titled the stock in the names of Australian nominees recruited by his co-conspirator, Steven Miotti; Miotti directed the Australian nominees to open brokerage accounts in the United States to receive the shares, but Flynn possessed the login and password data to control the accounts and shares of stock; Flynn caused the stock to be sold and the $15 million in proceeds to be

transferred to accounts at National Australia Bank; Flynn exercised control and dominion over the National Australia Bank accounts; the $15 million in the Australian accounts was unreported income; Flynn took these steps to "impair and impede the lawful functioning of the IRS in ascertaining his income tax liability during the years 2005 through 2015." Plea Agreement ¶ 3.

During the plea hearing, Flynn reaffirmed the facts in the Plea Agreement, and also testified under oath that he and Miotti were working together when Miotti recruited the nominees, Plea Tr. at 24; Flynn and Miotti controlled the Australian nominees' brokerage accounts and National Australia Bank accounts, id.; and Flynn and Miotti, working together, caused the Australian nominees to sell shares of stock that were held in the brokerage accounts and transfer the proceeds to the National Australia Bank accounts. Id. The facts in the Plea Agreement and plea colloquy provide more than a sufficient basis to determine that Flynn and Miotti agreed to defraud the IRS and that an overt act was taken in furtherance of the agreement's objectives.

Flynn disagrees, arguing that the plea lacks a factual basis because during the plea hearing he equivocated in response to the amount of money at issue in this case. This argument misstates the record. When asked about the amount, Flynn testified, "I have no way to calibrate the 15 million and I haven't seen anything of that, but I assume that's correct." Id. at 25. When asked whether he disputed the amount, Flynn testified: "I don't dispute it." Id. Moreover, Flynn stipulated to the $15 million amount in the Plea Agreement. Plea Agreement ¶ 3.

Flynn also argues that during the plea hearing he disclaimed involvement with the Australian nominees. Again, Flynn misstates the record. Although Flynn testified that all communication with the nominees was handled through Miotti, Flynn admitted involvement

9

with the nominees. Specifically, he admitted that he and Miotti had control over the nominees' brokerage accounts and National Australia Bank accounts; that he and "Miotti, working together caused these Australian people to sell shares of [stock] that were held in brokerage accounts here in the United States"; and that the proceeds from the sale of the stock were transferred to the National Australia Bank accounts that Flynn and Miotti controlled. Id. at 24. Thus, Flynn admitted, rather than disclaimed, involvement with the Australian nominees.

### ii. Count 3

Count 3 charges Flynn with filing a false tax return in violation of 26 U.S.C. § 7206(1), which prohibits "[w]illfully mak[ing] and subscrib[ing] any return . . . which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter."

In the Plea Agreement and at the plea hearing, Flynn admitted that: in 2007, he received approximately $2.7 million of stock proceeds from the Australian nominees to buy a house in Orono, Minnesota; the $2.7 million was income to Flynn; Flynn reported $26,136 of total income on his 2007 federal income tax return; Flynn signed the return under penalty of perjury and filed it on October 17, 2008; when he filed the return, Flynn knew it materially under reported his income for 2007; and Flynn filed the return "willfully, knowing that he was violating the law when he filed it." Plea Agreement ¶ 3; Plea Tr. at 25–26. These facts are more than sufficient to reasonably determine that Flynn violated 26 U.S.C. § 7206(1).

Resisting this conclusion, Flynn argues that the record does not support the Government's claim that the $2.7 million transferred in 2007 was income to him. This argument is squarely contradicted by the Plea Agreement in which Flynn admits that he "received

10

approximately $2.7 million of the proceeds from the Australian nominees to buy a house in Orono, Minnesota, <u>which was income to the Defendant</u>." Plea Agreement ¶ 3 (emphasis added).

Flynn also cites to an October 24, 2018 email exchange between Flynn's counsel and the Government to argue that he challenged the factual basis of the plea after the plea hearing. Egan Decl. [Docket No. 117] Ex. D. However, on October 30, 2018, less than a week after the email exchange, Flynn filed a sentencing memorandum in which he "agree[d] with, and reaffirm[ed], the factual basis of [his] plea agreement." Def.'s Sentencing Mem. at 15.

### c. Purported Rule 11 Violations

Flynn also argues that Rule 11(b)(1)(D) of the Federal Rules of Criminal Procedure was violated because the Court did not inform Flynn of his right to be represented by counsel at every stage of the proceeding. Rule 11(b)(1) requires the court to "inform the defendant of, and determine that the defendant understands, . . . the right to be represented by counsel–and if necessary have the court appoint counsel–at trial and at every other stage of the proceeding." Fed. R. Crim. P. 11(b)(1)(D). The Court specifically informed Flynn that he would "have the right to have the benefit of counsel at trial." Plea Tr. at 9.

The circumstances surrounding Flynn's plea establish that his substantial rights were not affected by any claimed Rule 11 omissions. Flynn was well aware that he had the right to the assistance of counsel at all stages of the proceeding, because he had already been represented by his attorneys at the arraignment and motions hearings in this case. Additionally, Flynn is not indigent, and thus appointment of counsel was not relevant to the realities of this case.

Flynn further argues that the Court failed to advise him of the presumption of innocence. Flynn again misrepresents the record. The Court told Flynn that, "[i]f you did go forward to

11

trial, you'd have the benefit of the presumption of innocence. That's an important part of our Constitution and it has a couple ramifications of how it plays out with regard to a criminal trial." Id. at 8. Flynn was not only told of the presumption, the Court also explained the operation of the presumption of innocence to protect his rights at trial.

There were no Rule 11 omissions to constitute a just and fair reason to withdraw Flynn's guilty plea.

### d. Supreme Court's Decision in Marinello v. United States

Flynn argues that the Klein conspiracy charged in Count 1 under 18 U.S.C. § 371 did not properly state an offense after the Supreme Court's decision in Marinello, 138 S. Ct. 1101. Because Marinello was decided in March 2018, almost three months before Flynn entered his plea and nearly nine months after he sought to withdraw the plea, this argument is in effect an untimely Rule 12 motion.

In Marinello, the Supreme Court interpreted the scope of 26 U.S.C. § 7212(a)'s Omnibus Clause, which forbids "corruptly or by force or threats of force . . . obstruct[ing], or imped[ing], or endeavor[ing] to obstruct or impede, the due administration of the [Tax Code]." Id. at 1104; 26 U.S.C. § 7212(a). The Supreme Court examined the language, statutory context, and legislative history of the clause and concluded that "'due administration of the [Tax Code]' does not cover routine administrative procedures that are near-universally applied to all taxpayers, such as the ordinary processing of income tax returns. Rather, the clause as a whole refers to specific interference with targeted governmental tax-related proceedings, such as an investigation or audit.'" Id. Based on this narrow interpretation, the Supreme Court held that to obtain an obstruction conviction under § 7212(a), the government is required to show a nexus

12

between the defendant's conduct and a particular IRS proceeding that was pending or reasonably foreseeable at the time the defendant engaged in the obstructive conduct. Marinello, 138 S. Ct. at 1109–10.

Flynn argues that the nexus element of 26 U.S.C. § 7212(a) applies equally to a Klein conspiracy charged under 18 U.S.C. § 371 because the language used for charging Klein conspiracies is identical in scope to the language at issue in Marinello. Flynn contends that the limitation in Marinello must be imported to Klein conspiracies to avoid an overly broad application of § 371.

The Court disagrees. Section 371 makes it a crime for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner for any purpose." 18 U.S.C. § 371. As the statutory text indicates, § 371 has two prongs—an "offense" prong and a "defraud" prong. Flynn is charged under § 371's defraud prong. Unlike the offense prong, the defraud prong does not require the existence of an underlying offense. See United States v. Tuohey, 867 F.2d 534, 537 (9th Cir. 1989) ("[T]he defraud part of section 371 criminalizes any willful impairment of a legitimate function of government, whether or not the improper acts or objective are criminal under another statute."); United States v. Rosengarten, 857 F.2d 76, 78 (2d Cir. 1988) ("A conspiracy to frustrate or obstruct the IRS's function of ascertaining and collecting income taxes falls clearly within the ban of section 371. This is so even though the contemplated substantive acts, standing alone, would not constitute a federal offense.") (internal citations omitted).

Additionally, the Supreme Court has long interpreted § 371's defraud prong as "broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or

between the defendant's conduct and a particular IRS proceeding that was pending or reasonably foreseeable at the time the defendant engaged in the obstructive conduct. Marinello, 138 S. Ct. at 1109–10.

Flynn argues that the nexus element of 26 U.S.C. § 7212(a) applies equally to a Klein conspiracy charged under 18 U.S.C. § 371 because the language used for charging Klein conspiracies is identical in scope to the language at issue in Marinello. Flynn contends that the limitation in Marinello must be imported to Klein conspiracies to avoid an overly broad application of § 371.

The Court disagrees. Section 371 makes it a crime for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner for any purpose." 18 U.S.C. § 371. As the statutory text indicates, § 371 has two prongs—an "offense" prong and a "defraud" prong. Flynn is charged under § 371's defraud prong. Unlike the offense prong, the defraud prong does not require the existence of an underlying offense. See United States v. Tuohey, 867 F.2d 534, 537 (9th Cir. 1989) ("[T]he defraud part of section 371 criminalizes any willful impairment of a legitimate function of government, whether or not the improper acts or objective are criminal under another statute."); United States v. Rosengarten, 857 F.2d 76, 78 (2d Cir. 1988) ("A conspiracy to frustrate or obstruct the IRS's function of ascertaining and collecting income taxes falls clearly within the ban of section 371. This is so even though the contemplated substantive acts, standing alone, would not constitute a federal offense.") (internal citations omitted).

Additionally, the Supreme Court has long interpreted § 371's defraud prong as "broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or

defeating the lawful function of any department of government." Haas v. Henkel, 216 U.S. 462, 479 (1910). In recent years the Supreme Court was presented with the opportunity to clarify or narrow the scope of § 371 conspiracies, but declined to do so. Specifically, in 2012 the Second Circuit rejected a vagueness challenge to Klein conspiracies by stating that "the Klein doctrine derives from and falls within the scope of the law . . . grounded on long-lived Supreme Court decisions," and that "such arguments are properly directed to a higher authority." United States v. Coplan, 703 F.3d 46, 62 (2d Cir. 2012), cert. denied 571 U.S. 819 (2013). The Supreme Court declined to grant certiorari in that case, thereby leaving its longstanding precedent in place. Coplan, 571 U.S. 819. Marinello does not address § 371, and the Court does not construe it as silently overturning the well-settled law governing conspiracies to defraud the United States.

For these and other reasons, the limitations on the substantive offense of 26 U.S.C. § 7212(a) do not apply to Klein conspiracies charged under the general conspiracy statute of 18 U.S.C. § 371.

**2. Alternative Bases for Denial of Motion to Withdraw Plea**

Flynn's decision to plead guilty was tardy,[1] just prior to trial. Now just prior to sentencing, he again makes a tardy decision. This time he seeks to withdraw the guilty plea he clearly understood resolved his right to trial on June 4, 2018. The procedural history of this case reflects the defendant's apparent effort to prolong the inevitable.

Flynn states he is "asserting his innocence where the factual basis for a federal offense

---

[1] So tardy was his decision that he deprived himself of a recommendation of a third point for acceptance of responsibility which would have lowered his offense level. The Government as early as June of 2018 was already asserting prejudice from Flynn's indecision about resolving his case.

does not exist in the record." Def.'s Mem. Supp. Mot. Withdraw Guilty Plea [Docket No. 116] at 26. As discussed above, however, an ample factual basis does exist.

The Government would suffer substantial prejudice if Flynn were allowed to retract his plea. The Government has spent considerable time and resources preparing this complex case for trial, including three months of trial preparation, flying a witness twice from Costa Rica to Minneapolis, and paying a tax expert $8,000 to prepare for testifying. Gov't Supplemental Mem. [Docket No. 127] at 7. Were Flynn allowed to withdraw his plea, much of the trial preparation process would need to be repeated. Further, witness memories will have faded from the time Flynn entered his eleventh hour plea in June of 2018 to the time the Government could again be ready for trial in several months.

For the foregoing reasons, Flynn's request to withdraw his guilty plea is denied and the case will proceed to sentencing.

## C. Materials to be Considered at Sentencing

At the Court's request, the parties briefed the issue of whether a defendant who substitutes retained counsel after pleading guilty may rely on sentencing arguments of prior counsel. The Government contends that under 18 U.S.C. § 3661, no limit exists to the information a court may consider in imposing an appropriate sentence. The Government thus states that it would not object to Flynn's new counsel "either relying on or refuting arguments made by prior counsel, so long as the record is clear as to what arguments are now being advanced." Gov't Supplemental Mem. at 4.

Flynn states that his successor counsel is "free to adopt or not adopt the positions of prior counsel" and that he "refuses to adopt any position of prior counsel inconsistent with his current

Motion to Withdraw Guilty Plea." Def.'s Supplemental Mem. [Docket No. 128] at 1. Flynn's counsel does not identify any inconsistent position beyond stating at the hearing that "a motion to withdraw the guilty plea is inconsistent with acceptance of responsibility." Plea Tr. at 28:21–23.

Based on the parties' positions, the Court will consider the entire record, including sentencing arguments advanced by prior counsel, in imposing an appropriate sentence. The Court's courtroom deputy will be in contact with the parties to select a sentencing date.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Scott Phillip Flynn's Motion to Continue Sentencing [Docket No. 113] is **GRANTED**, and the Motion to Withdraw Guilty Plea [Docket No. 115] is **DENIED**.

BY THE COURT:


      s/Ann D. Montgomery  
ANN D. MONTGOMERY  
U.S. DISTRICT JUDGE

Dated:  January 8, 2019.