**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

|  |  |  |
|---|---|---|
| | Plaintiff, | **MEMORANDUM OPINION** |
| v. | | **AND ORDER** |
| | | Criminal No. 16-347 ADM/KMM |
| Scott Phillip Flynn, | | Civil No. 22-1690 ADM |
| | Defendant. | |

_____

Lisa D. Kirkpatrick and Benjamin F. Langner, Assistant United States Attorneys, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Scott Phillip Flynn, pro se.

_____

**I.  INTRODUCTION**

This matter is before the undersigned United States District Judge for a ruling on Defendant Scott Phillip Flynn's ("Flynn") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Docket Nos. 162, 163].[1][2]  For the reasons set forth below, the Motion is denied.

**II. BACKGROUND**

**A.  Indictment and Retention of Defense Counsel**

On December 21, 2016, a grand jury indicted Flynn with conspiracy to defraud the United States in violation of 18 U.S.C. § 371, tax evasion in violation of 26 U.S.C.§ 7201, and filing false tax returns in violation of 26 U.S.C. § 7206(1).  See generally Indictment [Docket No. 1].  Attorney Earl Gray had represented Flynn for several months before the Indictment was

---

[1] All citations are to the criminal case docket.

[2] The actual title of the § 2255 Motion is "Motion to File Amended Motion to Vacate Set Aside or Correct Sentence Pursuant to 28 U.S.C. Section 2255."  However, no initial § 2255 Motion was filed.  As a result, the § 2255 Motion was docketed twice in this case---once as a Motion to File an Amended § 2255 Motion [Docket No. 162], and again as a § 2255 Motion [Docket No. 163].  The documents are identical.

filed.  Attorney Paul Engh was added as co-counsel in March of 2017.  Gray and Engh are two of the most experienced and well respected federal criminal defense attorneys in Minnesota.

The essence of the case against Flynn was that he hid millions of shares of valuable stock by transferring the stock to Australian nominees who had been recruited by his co-conspirator, Australian attorney Steven Miotti.  The Australian nominees placed the stock in U.S. brokerage accounts that Flynn could access.  Flynn then sold the stock as needed to pay his expenses without reporting the proceeds of the sale as income.  In 2007, for example, Flynn purchased a home in Orono, Minnesota for $2.7 million with cash from the proceeds of the sale of the Australian nominee's stock, yet only reported $26, 136 of income on his tax return.  See Second Superseding Indictment [Docket No. 83]; United States v. Flynn, 969 F.3d 873, 877 (8th Cir. 2020).

**B.  Defense Investigation**

Months before the Indictment was filed, attorney Gray hired Stephen Studdert to investigate the Government's case against Flynn.  Studdert reported his findings to Gray in a lengthy affidavit.  See Mot. Ex. 3 [Docket No. 162-3] at 2-81.[3]  In the affidavit, Studdert concluded that the search warrant affidavit for the Orono home was "fraught with abundant apparent factual error, extraordinarily pervasive misrepresentations and distortions of fact, erroneous and misleading conclusions, imprecise and inaccurate assertions, unsubstantiated interpretations, and false statements."  Id. at 2.

---

[3] Page citations for Exhibit 3 are to the page number in the CM/ECF banner at the top of the page.

In February 2017, Gray paid Studdert to fly to Australia to interview the Australian nominees and Steven Miotti.  Id. at 82-102.  Studdert also reviewed trust agreements, financial accounts, and other documents to be used at trial.  Id. at 66-71, 82-83.

**C.  Pretrial Motions**

In April 2017, attorneys Gray and Engh filed ten pretrial motions on Flynn's behalf, including a motion to dismiss on statute of limitations grounds [Docket No. 22], a motion to suppress evidence from the search of the Orono home [Docket No. 30]; and a motion to suppress statements [Docket No. 31], each of which was effectively dispositive.  In the motion to suppress the search of the home, Flynn's attorneys challenged the credibility of the search warrant and requested a hearing under Franks v. Delaware, 438 U.S. 154 (1978).  Some of the information from Studdert's investigation was included in the motion to suppress the evidence from the search.

After a lengthy evidentiary hearing on the motions and post-hearing briefing from the parties, then Magistrate Judge Menendez issued a Report and Recommendation ("R&R") [Docket No. 62] recommending that Flynn's dispositive motions be denied.  Flynn's attorneys filed 12 pages of objections to the R&R.  See Obj. [Docket No. 74].  The Court overruled the objections and adopted the R&R.  See Order [Docket No. 77].

**D.  Plea Agreement  and Hearing**

On June 4, 2018, the week before his trial was scheduled to begin, Flynn reached a Plea Agreement with the Government and entered a plea of guilty to Count 1 (conspiracy to defraud the United States) and Count 3 (false tax return - 2007) of the Second Superseding Indictment ("SSI").  See Plea Agreement [Docket No. 90]; Min. Entry [Docket No. 89]; Plea Tr. [Docket

No. 93].  In return for Flynn's pleas of guilty, the Government agreed to dismiss the remaining five counts in the SSI.  Plea Agreement ¶ 2.

Flynn stipulated in the Plea Agreement that: as compensation for assisting two privately held companies to become publicly traded, Flynn received millions of shares of publicly traded stock in those companies; Flynn titled the stock in the names of Australian nominees recruited by his co-conspirator, Steven Miotti; Miotti directed the Australian nominees to open brokerage accounts in the United States to receive the shares, but Flynn possessed the login and password data to control the accounts and shares of stock; Flynn caused the stock to be sold and the $15 million in proceeds to be transferred to accounts at National Australia Bank; Flynn exercised control and dominion over the National Australia Bank accounts; the $15 million in the Australian accounts was unreported income; Flynn took these steps to "impair and impede the lawful functioning of the IRS in ascertaining his income tax liability during the years 2005 through 2015;" and Flynn purchased the Orono house in 2007 with $2.7 million of the proceeds but only reported $26,136 of income on his tax return.  Plea Agreement ¶ 3.

During the change of plea hearing, Flynn testified under oath that he'd had sufficient time to consult with his attorneys about his case and that he was satisfied with his attorneys' service. Plea Tr. [Docket No. 93] at 5.  He also testified that no one was forcing him to plead guilty.  Id. at 10.  Flynn reaffirmed the factual basis for his plea during a lengthy colloquy with the prosecutor that spans four pages of the plea hearing transcript.  Id. at 22-26.  Flynn readily answered the questions asked of him and expressed no reluctance or confusion during the hearing.

**E.  Substitution of Counsel, Attempt to Withdraw Plea**

Attorneys Gray and Engh continued to represent Flynn after his guilty plea until December 2018, when Flynn reversed course just over a week before he was scheduled to be sentenced.  Flynn sought to substitute Gray and Engh with new counsel, continue his sentencing, and withdraw his guilty plea.  See Mot. Continue Sentencing [Docket No. 113]; Mot. Withdraw Guilty Plea [Docket No. 115].

The Court held a hearing during which Flynn's new and highly experienced attorney informed the Court that he had extensively reviewed the case materials and pleadings, and that the motion to withdraw the guilty plea was based strictly on argument and not on new evidence. Mot. Hr'g Tr. [Docket No. 130] at 7, 9, 12.  The attorney further stated that he was not raising any ineffective assistance of counsel issues with regard to Gray and Engh's representation.  Id. at 18-19.  The Court permitted the substitution of counsel and continued Flynn's sentencing, but denied his motion to withdraw his guilty plea.  Mem. Op. Order [Docket No. 131].

**F.  Sentence and Appeal**

On January 24, 2019, the Court sentenced Flynn to a term of 87 months and ordered him to pay $5,392,442.87 in restitution.  Sentencing J. [Docket No. 139].  Flynn appealed his conviction and sentence, and the Eighth Circuit affirmed on June 17, 2020.  See United States v. Flynn, 969 F.3d 873 (8th Cir. 2020).  The Supreme Court denied Flynn's petition for certiorari on June 28, 2021.  See Flynn v. United States, 141 S. Ct. 2853 (2021).

**G.  Flynn's 2255 Motion**

Flynn filed a timely 2255 Motion on June 27, 2021.  He now argues that attorneys Gray and Engh were constitutionally ineffective by:  (1) failing to file "vigorous" pre-trial motions; (2)

failing to obtain expert witnesses; (3) failing to investigate his claims of innocence and interview potential witnesses; (4) having minimal contact with Flynn prior to the plea hearing; and finally, (5) convincing him to plead guilty only because he had a prior conviction years earlier.  Mot. at 4-5.  Flynn contends that, but for his attorneys' failures, he would not have pleaded guilty.

### III.  DISCUSSION

**A.  Legal Standards**

**1.  28 U.S.C. § 2255**

Persons in federal custody are provided a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of their sentence under 28 U.S.C. § 2255.  See United States v. Addonizio, 442 U.S. 178, 185 (1979).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal, and if uncorrected, would result in a complete miscarriage of justice."  Walking Eagle v. United States, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)).

**2. Ineffective Assistance of Counsel**

"To establish ineffective assistance of counsel within the context of section 2255 . . . a movant faces a heavy burden."  Apfel, 97 F.3d at 1076.  A defendant must show that "(1) his attorney's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) he was prejudiced by the attorney's poor performance."  Pierce v. United States, 686 F.3d 529, 531 (8th Cir. 2012) (citing Strickland v. Washington, 466 U.S. 668 (1984)).

To satisfy the deficient performance prong of this two-part test, a defendant must show that counsel's errors were not the result of a "reasonable professional judgment." Strickland, 466 U.S. at 690.  In doing so, the defendant runs up against a strong presumption "that counsel . . . rendered adequate assistance."  Id.  To meet the prejudice prong, the defendant must prove, with "a probability sufficient to undermine confidence in the outcome," that "but for the counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Where a defendant challenges his guilty plea based on ineffective assistance of counsel, the second part of the test is "slightly modified" in that "the convicted defendant must demonstrate that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

**B.  Flynn's Claims**

### 1.  "Vigorous" Pre-trial Motions

Flynn claims that attorneys Gray and Engh did not file "vigorous pre-trial motions." Mot. at 4.  This assertion is squarely contradicted by the record.  Flynn's attorneys filed numerous pre-trial motions, including three dispositive motions, and objected to the R&R's recommendation that Flynn's dispositive motions be denied.  Although Flynn believes that the suppression motion challenging the search warrant should have included more findings from Studdert's investigation and that counsel should have produced Studdert as a witness during the motion hearing, the Court finds that counsel's representation of Flynn during pre-trial motions was well within the range of reasonably competent assistance.

7

## 2. Expert Witnesses

Flynn also argues that his attorneys failed to obtain expert witnesses. This claim is also refuted by the record. On May 30, 2018, attorney Engh sent the prosecution a letter providing notice that the defense would be calling Joel Lebewitz as an expert witness on taxation. See Gov't Resp. [Docket No. 171] Ex. A. The letter included a summary of the topics to which Lebewitz would be testifying. Id.

## 3. Investigation and Interviews of Potential Witnesses

Flynn further contends that his attorneys failed to investigate Flynn's claims that he was actually innocent. Flynn argues that "defense counsel apparently was not up to the task of interviewing potential witnesses, obtaining affidavits and providing the actual and real documentation which would counter the government's claims." Mot. at 4. This argument ignores that attorney Gray hired Studdert to thoroughly investigate the Government's case against Flynn, including sending Studdert to Australia and interviewing Miotti and the Australian nominees.

In his reply, Flynn argues that his attorneys' investigation should have included interviews with two additional individuals---a tax accountant and an advisor who had each worked for Flynn's (now deceased) father. The tax accountant gave Flynn's attorneys a "detailed memorandum" identifying "fatal flaws associated with the Government's assumptions and legal theory of the case." Reply [Docket No. 179] at 13. The advisor was familiar with the business transactions involved in the case and was allegedly able to "determine the validity" of many of the representations made by the IRS agent in the search warrant affidavit for the Orono home. Id. at 16.

In defining counsel's duty to investigate, the Supreme Court has stated that an attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690–91. Given the thorough investigation conducted by Studdert (which included an analysis of the representations made in the search warrant affidavit) and the detailed memorandum provided by Flynn's father's tax accountant, counsel exercised reasonable professional judgment in not interviewing Flynn's father's tax accountant or his advisor. Defense counsel's thorough investigation of the case is abundantly supported by the many filings of record in this case. The decisions of which avenues of investigation to pursue were strategic decisions of highly experienced, competent counsel.

Perhaps most significantly, Flynn has not shown that, but for counsel's failure to interview these particular individuals, the outcome of these proceeding would have been different. Indeed, when attempting to withdraw his guilty plea, Flynn hired a third highly experienced attorney who thoroughly reviewed the file, chose not to present additional evidence, and raised no ineffective assistance of counsel issues as to attorneys Gray and Engh. All the arguments raised by Flynn's new counsel were rejected by this Court and on appeal.

### 4. Contact with Counsel Before Plea Hearing

Flynn claims he had minimal contact with his attorneys before the plea hearing. Mot. at 5. This claim is contradicted by Flynn's own statements, made under oath at the plea hearing, that he'd had enough time to speak with his attorneys about his case and was satisfied with their service. "While a guilty plea taken in open court is not invulnerable to collateral attack in a post

conviction proceeding, the defendant's representations during the plea-taking carry a strong

presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'"

<u>Voytik v. United States</u>, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting <u>Blackledge v. Allison</u>, 431

U.S. 63, 74 (1977)).

   The transcript from the plea hearing clearly demonstrates that Flynn's attorneys had

prepared him well to enter a guilty plea in federal court.  Flynn answered every question without

reservation and affirmed the robust factual basis for his guilty plea.  Given this record, Flynn's

claim that his attorneys spent minimal contact with him before the plea hearing is wholly

incredible.

   **5.  Advice to Plead Guilty**

   Flynn claims that his attorneys convinced him to plead guilty "only because he had a

single unrelated prior conviction years before."  Mot. at 5.  Flynn also argues that his attorneys

insisted that he plead guilty rather than proceeding to trial because they did not understand the

case.  Mot. at 5-6; Reply at 12-13.

   Again, Flynn's assertions are contradicted by the record and are entirely unbelievable.

Flynn testified during the plea hearing that no one was forcing him to plead guilty and that he

was satisfied with his attorneys' service.  Plea Tr. at 5, 10.  In emails exchanged between Flynn

and his counsel just days before his change of plea hearing, the focus was not on Flynn's prior

conviction but on the evidence of Flynn's guilt that would be used against him at trial.  <u>See</u>

Reply Ex. 10 [Docket No. 179, Attach. 1] at 66-69.[4]  Additionally, the record as a whole,

including the numerous substantive pretrial motions and Flynn's own statements under oath at

---

[4]  Page citations for Exhibit 10 are to the page number in the CM/ECF banner at the top of the
page.

the change of plea hearing, establishes that Flynn's attorneys were knowledgeable about and well in command of the details of this complex case. Flynn's claim that his veteran defense attorneys advised him to plead guilty merely because of a prior conviction or because they did not understand his case is rejected.

## IV. EVIDENTIARY HEARING

An evidentiary hearing is not warranted, as the 2255 Motion and the files and record in this case conclusively show that Flynn is not entitled to § 2255 relief. 28 U.S.C. § 2255(b); Noe v. United States, 601 F.3d 784, 792 (8th Cir. 2010).

## V. CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds it unlikely that another court would decide the issues raised by this § 2255 Motion differently, or that any of the issues raised by Flynn's § 2255 Motion would be debatable among reasonable jurists. Thus, the Court declines to grant a certificate of appealability.

## VI. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Scott Phillip Flynn's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Docket Nos. 162, 163] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

11

BY THE COURT:


Dated:  May 31, 2023

 s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT